# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3364

———————

Sergio Loeza-Dominguez,                          *
                                                 *
                    Petitioner,                  *
                                                 *   Petition for Review of an
        v.                                       *   Order of the Board of
                                                 *   Immigration Appeals.
Alberto Gonzales, Attorney General               *
of the United States,[1]                         *
                                                 *
                    Respondent.                  *

———————

Submitted: September 14, 2005
Filed: November 17, 2005

———————

Before RILEY, FAGG, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

    Sergio Loeza-Dominguez petitions for review of the denial of his application for cancellation of removal and adjustment of status pursuant to 8 U.S.C. § 1229b. We deny the petition for review.

———————————————

    [1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is substituted automatically for his predecessor, John Ashcroft, as respondent.

Loeza-Dominguez, a native and citizen of Mexico, entered the United States without inspection in September 1991. During the next decade, throughout which he continuously resided in the United States, Loeza-Dominguez married, became a stepparent, and fathered two children. In May 2002, after admitting to striking his nine-year-old stepson on the back and leg with an electrical cord, Loeza-Dominguez pled guilty to malicious punishment of a child in violation of Minn. Stat. § 609.377.

In June 2002, Loeza-Dominguez was charged with being removable under the Immigration and Nationality Act ("INA") as an alien who is present in the United States without being admitted or paroled. 8 U.S.C. § 1182(a)(6)(A)(i). He conceded that he was removable, but applied for cancellation of removal and adjustment of status, as well as for voluntary departure. Under the INA, a nonpermanent resident alien is ineligible for cancellation of removal if he has been convicted of certain offenses, including "crimes involving moral turpitude," *see id*. § 1227(a)(2)(A)(i), and crimes of "domestic violence" or "child abuse, child neglect, or child abandonment." *See id*. § 1227(a)(2)(E)(i); *see also id*. § 1229b(b)(1)(C). In denying his application for cancellation of removal, the IJ found that Loeza-Dominguez's conviction for malicious punishment of a child was both a crime involving moral turpitude and a crime of child abuse, rendering him ineligible for cancellation. The BIA affirmed without opinion. *See* 8 C.F.R. § 1003.1(e)(4).

Loeza-Dominguez contends that his offense meets neither definition and that he was therefore eligible for cancellation of removal. We have jurisdiction under the recently enacted "REAL ID Act" to consider the legal question whether the state court conviction meets the definition of "child abuse" or "crime of moral turpitude." *See* Pub. L. No. 109-13, § 106 (2005); 8 U.S.C. § 1252(a)(2)(D); *Lopez v. Gonzales*, 417 F.3d 934, 936 (8th Cir. 2005).

The term "child abuse" is not defined in the INA, and while there is no doubt that certain violence against children qualifies under any possible definition of "child

abuse," the outer limits of the term in this statute are unclear. When confronted with an ambiguous statutory term, the BIA has discretion to arrive at an interpretation that is reasonable, and we accord substantial deference to its interpretations of the statutes that it administers. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999); *Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002). It is true, as Loeza-Dominguez points out, that Congress has defined "child abuse" for the purpose of federal child abuse reporting requirements in another part of the United States Code, 42 U.S.C. § 13031(c)(1), but the BIA is not bound to apply the same definition for the much different purpose of determining which aliens are ineligible for cancellation of removal. Congress has not spoken to the precise question at issue in the immigration area, so we examine the BIA's approach to determine whether it is rational and consistent with the statute. *See Sullivan v. Everhart*, 494 U.S. 83, 89 (1990).

The BIA has given "child abuse" in § 1227(a)(2)(E) a relatively broad construction, applying "common usage" and citing the *Black's Law Dictionary* definition of "child abuse" as "any form of cruelty to a child's physical, moral, or mental well-being." *See In re Rodriguez-Rodriguez,* 22 I. & N. Dec. 991, 996 (B.I.A. 1999). In *Rodriguez-Rodriguez*, the BIA concluded that "child abuse," like the term "sexual abuse of a minor," 8 U.S.C. § 1227(a)(2), § 1101(a)(43)(A), encompasses actions or inactions that do not require physical contact with a child. *See also In re Manzano-Hernandez*, 2005 WL 698392 (B.I.A. 2005) (unpublished) ("We have held that the term 'crime of child abuse' appearing in section 237(a)(2)(E)(i) cannot reasonably be interpreted as defining any discrete offense; on the contrary, we have indicated that it refers to '[a]ny form of cruelty to a child's physical, moral, or mental well-being.'") (quoting *Rodriguez-Rodriguez*, 22 I. & N. Dec. at 996) (alteration in original). We see no basis to conclude that the BIA acted unreasonably in employing this common legal definition of "child abuse." Although the administrative decision did not specify the definition of "child abuse" applied in this case, an IJ is bound to apply the BIA's precedent defining "child abuse," 8 C.F.R. § 1003.1(g), and we

therefore review the decision in this case to determine whether Loeza-Dominguez's prior offense falls within the common definition previously adopted by the BIA.

Under Minnesota law, malicious punishment of a child occurs whenever a parent, legal guardian, or caretaker, "by an intentional act or a series of intentional acts with respect to a child, evidences unreasonable force or cruel discipline that is excessive under the circumstances." Minn. Stat. § 609.377, subd. 1. Loeza-Dominguez contends that his conviction under this statute cannot reasonably be considered "child abuse," because the statute does not require an element of physical injury. We have said already that we think it was reasonable for the BIA to adopt a definition of child abuse that includes some acts that do not result in physical injury. Nonetheless, Loeza-Dominguez suggests that if the Minnesota courts apply the state criminal statute broadly, some convictions will be outside the scope of "child abuse" under the federal immigration statute.

Even indulging the unlikely assumption that Minnesota might define "malicious punishment of a child" to encompass acts that do not constitute a "form of cruelty to a child's physical, moral, or mental well-being," that circumstance would not exclude *all* convictions under the Minnesota statute from the scope of "child abuse." At most, it would render the Minnesota statute divisible – that is, some violations would be "child abuse" under the federal statute, while others would not. *See In re Vargas-Sarmiento*, 23 I. & N. Dec. 651, 654 (B.I.A. 2004) ("Where a statute encompasses some acts that are grounds for removal and others that are not, it is considered to be divisible."); *cf. Chanmouny v. Ashcroft*, 376 F.3d 810, 812 (8th Cir. 2004). In that event, we look to the record of conviction to determine whether the alien was convicted under the part of the statute that meets the definition of child abuse. *Id.* at 813. The record of conviction for this purpose typically includes the charging document and the guilty plea proceeding, *id.*, both of which are part of the administrative record here.

-4-

In Loeza-Dominguez's prior criminal case, the complaint alleged that he repeatedly struck his stepson on the back and legs with the electrical cord from an iron, and Loeza-Dominguez admitted as much during his plea hearing. (A.R. at 158, 173). The complaint further alleged that the child suffered physical injuries, including "two long, red, circular marks," and a large bruise on his thigh. (A.R. at 173). A reasonable adjudicator easily could conclude that this conduct was a form of cruelty to the child's physical, moral or mental well-being, and thus constituted child abuse as defined by the BIA.

Because we hold that the IJ permissibly concluded that Loeza-Dominguez sustained a conviction for a crime of "child abuse," we need not reach the alternative holding that he also was convicted of a crime involving moral turpitude. We lack jurisdiction to consider Loeza-Dominguez's contention that his case was inappropriate for affirmance without opinion by the BIA. *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004).

The petition for review is denied.

_____